**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 95-50059

(Summary Calendar)
_____


REGINALD SWIST, JR.,

                                        Plaintiff-Appellant,

versus

SHIRLEY S. CHATER, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION

                                        Defendant-Appellee.


_____

Appeal from the United States District Court
For the Western District of Texas
(94 CV 79)
_____
August 25, 1995

Before HIGGINBOTHAM, DUHÉ, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

        Reginald Swist, Jr., applied for disability insurance benefits and supplemental security income under Titles II and XVI, respectively, of the Social Security Act.[1] He appeals the district court's affirmance of the final decision of the Commissioner of

_____

        [*]        Local Rule 47.5.1 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

        [1]        42 U.S.C. §§ 401-433, 1381-1383c (1988).

Social Security ("Commissioner")[2] to accept the determination of an administrative law judge ("ALJ") that Swist was not disabled. We affirm.

I

Swist applied for supplemental security income based on disability, alleging diabetes, a bad ankle, and eye problems. The Social Security Administration ("SSA") denied Swist's application on the grounds that medication could sufficiently control his disorders and allow him to engage in substantial gainful activity. The SSA also denied his application on reconsideration. Swist then requested a hearing before an ALJ.

Swist's medical records at the time of the hearing indicated that he had arthritis in his foot, ankle, and knee, which required him to use crutches outdoors and a cane indoors. He also suffered from glaucoma, heart pain, sinus problems, and had a ten-year history of treatable diabetes. At the hearing, Swist complained of frequent blackouts, an inability to sleep throughout the night, exhaustion during the day, and lack of strength in both hands. A neurological examination by Dr. Cain[3] revealed that: Swist's triglyceride level was very elevated, he could not walk on the toes and heel of his right foot, he had a limping gait on his right

_____

[2] Effective March 31, 1995, the Secretary of Health and Human Services transferred to the Commissioner of Social Security "all functions . . . with respect to or in support of the programs and activities the administration of which is vested in the Social Security Administration." Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, § 105(a), 108 Stat. 1464 (1994).

[3] Swist obtained the neurological examination from Dr. Cain, a disinterested physician, at the direction of the ALJ.

side, he lacked reflexes in the right quadriceps and both Achilles tendons, he had a positive Tinel's sign over the right median nerve at the wrist,[4] and he had some decrease in his right grip. Dr. Cain concluded that Swist suffered from diabetes mellitus, obesity, hypertension, status post fracture of the right ankle, and recurrent headaches. Dr. Cain also suggested that Swist should have a CAT scan to evaluate his headaches and a nerve conduction study to rule out carpal tunnel syndrome. The records do not show whether Swist ever pursued the testing. Based on his diagnosis, Dr. Cain limited Swist to lifting no more than fifty pounds for not more than two-thirds of the time during a normal work day. He also limited Swist to standing and walking no more than one hour without interruption and six hours maximum during a normal work day. Lastly, he limited climbing, balancing, stooping, crouching, kneeling and crawling, and working at heights due to ankle instability. He found no other impairment of physical functions.

Following the hearing, the ALJ made several findings. First, the ALJ found that Swist was forty-one years old, six feet tall, and weighed 304 pounds. Second, the ALJ found that Swist had a high school education and had worked as a diesel mechanic all his working life, but that he had not engaged in substantial gainful activity for two years and was unable to perform his past relevant work as a mechanic. Third, the ALJ also found that Swist's impairments failed to equal medically those impairments that the

---

[4]    Tinel's sign indicates a partial lesion or the beginning regeneration of the nerve. Dorland's Illustrated Med. Dictionary 1526 (27th ed. 1988).

applicable regulations consider severe enough to prevent a person from doing any substantial gainful activity.[5]  Finally, the ALJ found that Swist's complaints of right ankle pain were credible only to the extent that Swist could not perform light, medium, or heavy work, and that he was therefore capable of the full range of sedentary work as described in the regulations.[6]  The ALJ applied the "medical-vocational guidelines"[7] and concluded that Swist was not disabled.  The Appeals Council, which reviews ALJ decisions, denied Swist's request for review, and the decision of the ALJ became the final decision of the Commissioner.

---

[5]      20 C.F.R. § 404.1525 (1994); *id.* Pt. 404, Subpt. P, app. 1.  The Secretary evaluates the claimant's medical evidence to determine if the claimant has such an impairment or a condition equivalent to those listed in the appendix. 20 C.F.R. § 404.1526. If the Secretary determines that a claimant does not have a severe impairment that would warrant a finding of disability, the Secretary may consider the impact of other related symptoms, such as pain.  *Id.* § 404.1529.

[6]      The regulations define "sedentary work" as follows:
Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
20 C.F.R. § 416.967(a).

[7]      The medical-vocational guidelines, 20 C.F.R. Pt. 404, Subpt. P, app. 2, assist the Secretary in making a determination on a claim of disability by providing tables that compare various vocational factors (i.e., age, education, and work experience) against an individual's capability for work (i.e., sedentary, light, medium, heavy, or very heavy work) to determine if a claimant is able to engage in substantial gainful work other than that work in which the claimant has previously engaged.  The guidelines direct a finding of "disabled" or "not disabled."  *Id.*
The regulations define Swist as a "younger person," *See* 20 C.F.R. § 416.963(b) (defining "younger person" as anyone under the age of 50), and as having a high school education, *id*. § 416.964(b)(4).  Rules 201.27 and 201.28 of the guidelines table, 20 C.F.R. Pt. 404, Subpt. P, app. 2, tbl. 1, address younger individuals with a high school education or better and a residual functional capacity to do sedentary work.  Rule 201.27 covers individuals who have no work skills, while Rule 201.28 covers individuals who have non-transferable work skills.  *Id.*  Because both rules direct the same finding of "not disabled," *id.*, the ALJ found that the existence and transferability of Swift's work skills was not material.

-4-

Swist then filed a civil action in the district court. A magistrate judge reviewed the Commissioner's decision and recommended that the district court vacate and remand it for further proceedings. The district court declined to adopt the magistrate judge's recommendation, affirmed the Commissioner's decision, and dismissed the case.

Swist now appeals, arguing that (1) the Commissioner failed to recognize Swist's lack of right grip strength, his visual problems, and a diagnosis that he might possibly have carpal tunnel syndrome, (2) the Commissioner's determination that Swist could perform the full range of sedentary work was therefore in error, and (3) her final decision that Swist is not disabled is not supported by substantial evidence on the record as a whole.

II

Judicial review of a disability claim under 42 U.S.C. § 405(g) focuses on whether the whole record contains substantial evidence that supports the Commissioner's findings. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); *see also Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992) (applying *Richardson*). Substantial evidence "must

be more than a scintilla, but it need not be a preponderance." *Anthony*, 954 F.2d at 295; *accord Muse*, 925 F.2d at 789.

A person is disabled if he is unable "`to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Muse*, 925 F.2d at 789 (quoting 42 U.S.C. § 423(d)(1)(A)). In evaluating evidence of disability, the Commissioner properly used a five-step sequential evaluation process. *See Anthony*, 954 F.2d at 293 (noting that the promulgation of the five-step test was "pursuant to the express authorization of Congress"). Under that test:

> (1) A claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). If at any stage of the evaluation, the Commissioner finds the claimant to be either disabled or not disabled, the inquiry is complete. *Id.; accord Anthony*, 954 F.2d at 293.

This case reached the fifth step. The ALJ first found that Swist "has not engaged in substantial gainful activity since May 15, 1991." The ALJ also found that Swist "has severe post

-6-

traumatic arthritis of the right ankle and obesity, and non-severe diabetes mellitus, hypertension and glaucoma, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4." The ALJ further found that Swist "is unable to perform his past relevant work as a mechanic." Swist does not challenge the ALJ's findings on these first four steps. Because of these findings, Swist established a *prima facie* case of disability, and the burden of proof shifted to the Commissioner to show that Swist can perform other work. *Bowling*, 36 F.3d at 435; *Muse*, 925 F.2d at 789.

Swist challenges the ALJ's finding at step five that he "has the residual functional capacity to perform the full range of sedentary work," and, therefore, considering Swist's "residual functional capacity, age, education, and work experience, he is not disabled." Swist argues specifically that in accepting the ALJ's finding, the Commissioner failed to consider his weak right grip strength and his visual problems and therefore erred in determining that he could perform the full range of sedentary work.

The record establishes that Swist has some decreased strength in his right grip and might suffer from carpal tunnel syndrome. However, according to Dr. Cain, Swist's impairments do not affect his abilities to reach, handle, finger, feel, push, or pull. The Commissioner weighed the evidence in Dr. Cain's report and determined that Swist was capable of the full range of sedentary work. Here, Swist is simply asking us to reweigh the evidence to

determine which of the two allegedly conflicting diagnoses to accept. However, "[t]he [Commissioner], not the courts, has the duty to weigh the evidence, resolve material conflicts in the evidence, and decide the case." *Chapparo v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987); *accord Johnson v. Bowen*, 864 F.2d 340, 346 (5th Cir. 1988); *see also Anthony*, 954 F.2d at 295 ("[C]onflicts in the evidence are for the [Commissioner] to resolve."). To make a finding of "no substantial evidence," we must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983) (citation omitted); *accord Johnson*, 864 F.2d at 346. The Commissioner may rely on the opinion of the examining physician. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) (holding that ALJ may properly rely on only one physician's conclusions). Accordingly, we hold that there is substantial evidence to support the Commissioner's finding that Swist's decrease in grip strength and possible carpal tunnel syndrome do not impair his ability to perform the full range of sedentary work.

Similarly, Swist's claim that the Commissioner failed to consider his eye problems lacks merit. The ALJ specifically noted that Swist suffered from glaucoma, but further noted that Swist's glaucoma had improved greatly with treatment. Swist's medical records support this finding.[8] Moreover, the evidence indicates that Swist's glaucoma had never significantly affected his vision.

---

[8] Swist's physicians at Brackenridge Hospital considered his glaucoma "much improved" after treatment.

Indeed, Swist did not wear glasses to the hearing and acknowledged never having worn glasses. Objective medical facts support the Commissioner's finding that Swist's impairment did not affect his capacity to perform sedentary work; the district court therefore did not err in affirming the Commissioner's determination.

Swist also challenges the Commissioner's acceptance of the ALJ's use of the medical-vocational guidelines to decide that he is not disabled. He asserts that the Commissioner should not have used the vocational-medical guidelines,[9] and that the Commissioner should have called a vocational expert to testify about Swist's ability to perform jobs available in the economy in substantial numbers.[10]

Because the Commissioner correctly found that Swist's impairments do not significantly affect his residual functional capacity to perform the full range of sedentary work, she was entitled to rely exclusively on the guidelines. "When the claimant suffers only from exertional impairments or his nonexertional impairments do not significantly affect his residual functional capacity, the ALJ [and, consequently, the Commissioner] may rely exclusively on the [Medical-Vocational] Guidelines in determining whether there is other work available that the claimant can

---

[9] The Commissioner will not apply the vocational-medical guidelines if a person's relevant characteristics do not match the criteria of a guidelines rule. 20 C.F.R. § 416.969; *accord Bowling*, 36 F.3d at 435. None of the rules in the vocational-medical guidelines are applicable to an individual who cannot perform the full range of sedentary work. 20 C.F.R., Pt. 404, Subpt. P, App. 2, § 200(h).

[10] Where there is a complex issue as to how an applicant's skills and restrictions relate to specific occupations, the Secretary may use the services of a vocational expert or other specialist. 20 C.F.R. § 404.1566(e).

perform." *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).[11] Considering Swist's "age, education, past work experience, and residual functional capacity," the medical-vocational guidelines directed a finding of "not disabled,"[12] and the Commissioner properly found that Swist was not disabled. Accordingly, the district court did not err in upholding the Commissioner's decision.

## III

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[11] "Limitations or restrictions which affect your ability to meet the demands of jobs other than the strength demands, that is, demands other than sitting, standing, walking, lifting, carrying, pushing or pulling, are considered nonexertional." 20 C.F.R. § 416.969a(a). Nonexertional limitations include, in relevant part, "difficulty in seeing or hearing" and "difficulty performing the manipulative or postural functions of some work such as reaching, crawling, or crouching." *Id.* § 416.969a(c)(1)(iv),(vi). Because we hold that the Secretary correctly found that Swist's impairments do not significantly affect his residual functional capacity, we need not decide whether those impairments are exertional or non-exertional.

[12] 20 C.F.R., Pt. 404, Subpt. P, app. 2, rules 201.27-201.28; *see also supra* note 6.